## PENN & RISON *v.* MUTUAL COTTON OIL CO.

Where the scheme of a will was that the executor should sell all the property of the estate, either at public or private sale as he might think best for the interest of the estate, and, after paying the debts of the testator and the special legacies, should equally divide the residuum among the testator's widow and his four children; and after all the other property had been sold by the executor and all the special legacies turned over as directed, and all the debts had been paid except the taxes assessed against a certain parcel of realty, which alone remained in the possession of the executors unadministered, and which could not be divided in kind, the executor, in good faith and for the purpose of paying such taxes and for distribution, sold this last piece of realty at private sale, it was discharged of a prior judgment lien against two of the residuary legatees, no levy having been made before such sale.

Argued October 20, — Decided December 14, 1898.

Levy and claim. Before Judge Butt. Muscogee superior court. May term, 1898.

An execution against C. H. Watt and T. B. Watt, dated April 14, 1897, was levied upon land which was claimed by the Mu-

tual Cotton Oil Company, under a deed from the executor of W. J. Watt, who, at the time of his death, was the owner of the land in dispute. The defendants in execution were his sons, and it was contended that under his will they had an interest in the land, and their interest was subject to the execution. The will, after directing payment of testator's debts as soon as practicable, etc., contains the following items: "I desire and direct my executor to make an inventory of all property belonging to my estate, and sell as speedily as the interest of my creditors and legatees will allow, without sacrifice, either at public or private sale as thought best, all stocks of merchandise of any description and all personal property except that given as part of her legacy to my beloved wife, Ada V. Watt. Also all lands and real estate of every description, either at public or private sale, as my executor in his best judgment may think to the interest of my estate." Item 4 directs the executor to pay $50 per month to the testator's wife until the estate is divided, and he can pay the special legacy left to her. Item 5 gives the testator's wife a special legacy of $4,000 in money, which is to be paid as soon as his debts are paid; also certain personal property. Item 6 directs the disposal of certain personal property. Item 7 gives the testator's son, Thomas B. Watt, certain personal property. Item 8: "I desire and direct that after my just debts have been paid and the special legacy and property given to my wife, Ada V. Watt, in item 5th, and her own property mentioned in item 6th, have all been turned over to her as my will directs, and the furniture given to Thomas B. Watt in item 7th has all been turned over as my will directs, the residue of my estate to be equally divided between my beloved wife Ada V. Watt, my daughter Mrs. Cornelia T. Walker, my son Charles H. Watt, my son Thomas B. Watt, and my daughter Mrs. Willie S. Howard, each getting a share and share alike." Item 9 disposes of the interest of the testator in the business of Watt & Walker. Item 10 recites indebtedness to his sons, C. H. and T. B. Watt, and directs the executor to settle with them as with other creditors. Item 11 appoints R. O. Howard executor, and relieves him from giving bond and security as executor, but directs that he make an appraisement of

the estate and make returns to the court of ordinary. At the trial the will was introduced in evidence, and the executor testified that he qualified under it, and sold the property in dispute to the Mutual Cotton Oil Company for $2,000, the sale being made by him for the purpose of distribution and payment of debts, which debts consisted of taxes assessed against the property, the executor's commissions for receiving and paying out proceeds of sale of said property, and expenses incurred in making the sale. A real estate agent sold the property for him. All other debts against the estate and all specific legacies named in the will had been paid off and discharged prior to this sale. The heirs of the testator were his wife, two daughters and two sons, C. H. and T. B. Watt. They each had in the testator's estate a fifth undivided interest under the will. The proceeds of the sale of the property in dispute, less taxes and commissions of the executor and costs incurred in making the sale, were paid by the executor to them in settlement of their interest in this property. He could not state how much was paid to them or either of them. They drew on their interest as heirs in the estate, after the sale. The sale was not made under any order of the court of ordinary, nor after advertisement. It was a private sale under power of sale contained in the will. The property could not be divided in kind, and it was necessary to sell it to effect a distribution and pay these debts. The sale was made bona fide for this purpose, and the price paid was a fair one. Witness knew nothing of any judgment against C. H. and T. B. Watt, or either of them.

The plaintiffs contended that, all the debts of the estate having been paid and satisfied, and all specific legacies under the will having been paid, and all the assets of the estate having been administered except this specific property, each of the residuary legatees, including the defendants in execution, had an ascertained interest in specific property, which became vested, and was subject to levy and sale, and as such subject to the lien of an execution against them individually.

The court ruled, under the evidence, that the executor was authorized to make private sale of the property, and that the sale to the claimant divested the lien of the execution held by

plaintiffs against C. H. and T. B. Watt; and directed a verdict in favor of the claimant.

*W. A. Wimbish* and *E. D. Burts*, for plaintiffs.
*McNeill & Levy*, contra.

FISH, J. In this case the sole question argued here was whether, under the facts, the defendants in execution had any interest in the realty levied upon, which was subject to the lien of the judgment against them. In *McDaniel* v. *Edwards*, 56 *Ga.* 444, it was held that, "After a sale of land for distribution by an executor, under an order of the court of ordinary, it stands discharged of prior judgment liens against one of the legatees, whose interest therein, under the will, was one equal undivided share with several other legatees." In the opinion Judge Bleckley said: "The executor had administered the land before the levy. For that purpose he was the agent of the law. He administered under a judgment of the court of ordinary, the court clothed by law with jurisdiction over estates, testate and intestate. The purchaser bought the land as the property of the testator, against whom there was no judgment, not as the property of the legatee, the judgment debtor. The title of the purchaser, therefore, goes back behind the lien of this judgment and cuts it off." As there was no levy prior to the sale in the case under consideration, the same result would follow, provided the executor had legal authority to make the sale under which the defendant in error purchased the property. If such power was given to the executor by the will, then he needed no order from the court of ordinary to sell. The will, after it was admitted to probate, was the law for the administration of the testator's estate, and a sale by virtue of a power conferred thereby was as complete an administration of the property and passed the title to it as effectually as if made under an order of court. It will be seen, by reference to the terms of the will, set out in the reporter's statement, that the executor was directed to sell all the property, of every description, belonging to the estate of the testator; that the sale was to be either public or private, as the executor, in his best judgment, might think to the interest of the estate; and that after the debts of the testator had been paid and the special legacies turned over as indicated, it

was directed that the residue of the estate should be divided between the widow, two daughters, and two sons of the testator —naming them all—share and share alike. The executor therefore was unquestionably authorized by the will to sell this property at private sale for the purpose of paying debts and special legacies, and for distribution. It appeared from his undisputed testimony that the sale was made by him in good faith; that all other property had been administered; that C. H. and T. B. Watt had drawn on their interest in the estate at different times; that there were other legatees; that this property could not be divided in kind; that it was necessary that it be sold for the purpose of distribution, and for the payment of the taxes that had been assessed against it; and that it was sold by the executor for these purposes. The property levied on, therefore, never vested in C. H. and T. B. Watt, defendants in execution, and the lien of the judgment obtained against them prior to the executor's sale never attached to the property. The will put the title to it in the executor, to be disposed of in conformity to its provisions, and it remained in him until it was duly administered, and then it belonged to the purchaser to whom he sold it. There was no error in directing a verdict finding the property not subject.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., and Little, J., absent.*